## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YASIR AFIFI,<br><br>     Plaintiff<br><br>     v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States;<br><br>ROBERT S. MUELLER, III, in his official capacity as Director of the Federal Bureau of Investigation;<br><br>JENNIFER KANAAN, in her individual capacity, c/o Office of the General Counsel Federal Bureau of Investigation 935 Pennsylvania Avenue, NW Suite: PA# 400 Washington, DC 20535;[1] and<br><br>UNKNOWN AGENTS, in their individual capacities<br><br>     Defendants. | No. 1:11cv460 (BAH) |

### DEFENDANT JENNIFER KANAAN'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Jennifer Kanaan, in her individual capacity, respectfully moves this Court to dismiss all claims against her in Plaintiff's Amended Compliant. The reasons for this motion are set forth in the accompanying Memorandum.

---

[1] Defendant Kanaan is a Special Agent with the Federal Bureau of Investigation, and for security reasons, her residential address is not listed here.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

RUPA BHATTACHARYYA
Director, Torts Branch

ANDREA W. McCARTHY
Senior Trial Counsel,
Office of Constitutional & Specialized Torts

/s/ Brant S. Levine
Brant S. Levine, District of Columbia Bar No. 472970
Trial Attorney
United States Department of Justice, Civil Division
Office of Constitutional & Specialized Torts
P.O. Box 7146, Washington, D.C. 20044
Tel: 202-616-4373; Fax: 202-616-4314
E-Mail: Brant.Levine@usdoj.gov

*Attorneys for Defendant Jennifer Kanaan*

September 11, 2012

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YASIR AFIFI,<br><br>     Plaintiff<br><br>     v.<br><br>ERIC HOLDER, et al.,<br><br>     Defendants. | No. 1:11cv460 (BAH) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT JENNIFER KANAAN'S MOTION TO DISMISS**

STUART F. DELERY
Acting Assistant Attorney General

RUPA BHATTACHARYYA
Director, Torts Branch

ANDREA W. McCARTHY
Senior Trial Counsel,
Office of Constitutional & Specialized Torts

*/s/* Brant S. Levine
Brant S. Levine, District of Columbia Bar No. 472970
Trial Attorney
United States Department of Justice, Civil Division
Office of Constitutional & Specialized Torts
P.O. Box 7146, Washington, D.C. 20044
Tel: 202-616-4373; Fax: 202-616-4314
E-Mail:  Brant.Levine@usdoj.gov

*Attorneys for Defendant Jennifer Kanaan*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................................................iii

**OVERVIEW** ........................................................................................................................... 1

**BACKGROUND** .................................................................................................................... 1

**DISCUSSION** ......................................................................................................................... 3

    I.   QUALIFIED IMMUNITY PROTECTS AGENT KANAAN FROM PLAINTIFF'S
         FOURTH AMENDMENT CLAIM BECAUSE AT THE TIME SHE ACTED, IT
         WAS NOT CLEARLY ESTABLISHED THAT GPS MONITORING WAS A
         SEARCH SUBJECT TO THE FOURTH AMENDMENT. ...........................................4

    II.  PLAINTIFF CANNOT SUE AGENT KANAAN IN HER INDIVIDUAL
         CAPACITY UNDER THE PRIVACY ACT BECAUSE THE PRIVACY ACT
         DOES NOT CREATE A CAUSE OF ACTION AGAINST INDIVIDUAL
         FEDERAL EMPLOYEES..................................................................................................7

    III. PLAINTIFF HAS NOT STATED A CLAIM AGAINST AGENT KANAAN
         UNDER THE FIRST AMENDMENT..............................................................................7

         A.     Plaintiff lacks a cause of action to sue Agent Kanaan under the First Amendment
         because the comprehensive nature of the Privacy Act precludes creation of a parallel
         cause of action against individual employees. ................................................................ 7

         B.     Agent Kanaan is immune from Plaintiff's First Amendment claims. .................. 11

    IV. PLAINTIFF CANNOT SEEK AN INJUNCTION OR DECLARATION
         AGAINST AGENT KANAAN AS AN INDIVIDUAL. ...............................................14

**CONCLUSION** ................................................................................................................... 14

## TABLE OF AUTHORITIES

Cases

*Anderson v. Creighton*,

    483 U.S. 635 (1987) ............................................................................................ 4, 5, 11

*Ashcroft v. al-Kidd*,

    131 S. Ct. 2074 (2011) ..................................................................................... 4, 5, 11, 12

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) ....................................................................................... 7, 12, 13, 14

*Atherton v. D.C. Office of Mayor*,

    567 F.3d 672 (D.C. Cir. 2009) .............................................................................. 12, 13

*Bame v. Dillard*,

    637 F.3d 380 (D.C. Cir. 2011) ...................................................................................... 5

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007) ..................................................................................................... 12

*Bivens v. Six Unknown Named Agents*,

    403 U.S. 388 (1971) ....................................................................................................... 3

*Bush v. Lucas*,

    462 U.S. 367 (1983) .............................................................................................. 7, 8, 10

*Chung v. U.S. Dep't of Justice*,

    333 F.3d 273 (D.C. Cir. 2003) ...................................................................................... 8

*Chung v. U.S. Dep't of Justice*,

    No. 00-1912, 2001 WL 34360430 (D.D.C. Sept. 20, 2001 *aff'd in part,*

*Chung v. U.S. Dep't of Justice,*

333 F.3d 273 (D.C. Cir. 2003) .............................................................................. 8, 10, 11

*Corr. Servs. Corp. v. Malesko*,

    534 U.S. 61 (2001) ........................................................................................................ 7

*Curley v. Vill. of Suffern*,

    268 F.3d 65 (2d Cir. 2001).............................................................................................. 13, 14

*Davis v. United States*,

    131 S. Ct. 2419 (2011).......................................................................................................... 6

*Downie v. City of Middleburg Heights*,

    301 F.3d 688 (6th Cir. 2002) ........................................................................................... 8, 9

*Feit v. Ward*,

    886 F.2d 848 (7th Cir. 1989) ............................................................................................. 14

*Frank v. Relin*,

    1 F.3d 1317 (2d Cir. 1993)................................................................................................. 14

*Harlow v. Fitzgerald*,

    457 U.S. 800 (1982)............................................................................................................. 4

*Hatfill v. Ashcroft*,

    404 F. Supp. 2d 104 (D.D.C. 2005) ........................................................................ 8, 9, 13, 14

*Hunter v. Bryant*,

    502 U.S. 224 (1991)............................................................................................................. 5

*In re Application of United States*,

    No. 10-2188, 2011 WL 3423370 n.5 (D. Md. Aug. 3. 2011) ................................................... 11

*Kentucky v. Graham*,

    473 U.S. 159 (1985)............................................................................................................. 2

*Kirby v. City of Elizabeth*,

    388 F.3d 440 n.10 (4th Cir. 2004) ...................................................................................... 14

*Krieger v. U.S. Dep't of Justice*,

    529 F. Supp. 2d 29 (D.D.C. 2008) ...................................................................................... 13

*Leyland v. Edwards*,

    797 F. Supp. 2d 7 (D.D.C. 2011) ........................................................................................ 14

*Malley v. Briggs*,

    475 U.S. 335 (1986)............................................................................................................. 4

*Martinez v. Bureau of Prisons*,

   444 F.3d 620 (D.C. Cir. 2006) ............................................................................ 7

*Messerschmidt v. Millender*,

   132 S. Ct. 1235 (2012) .................................................................................. 4, 6

*Minneci v. Pollard*,

   132 S. Ct. 617 (2012) ......................................................................................... 8

*Pearson v. Callahan*,

   555 U.S 223 (2009) ............................................................................................ 5

*Reichle v. Howard*,

   132 S. Ct. 2088, 2093 (2012) ........................................................................ 5, 8

*Schweiker v. Chilicky*,

   487 U.S. 412 (1988) ..................................................................................... 8, 10

*Scott v. Flowers*,

   910 F.2d 201 n.25 (5th Cir. 1990) ................................................................... 14

*Spagnola v. Mathis*,

   859 F.2d 223 (D.C. Cir. 1988) ..................................................................... 8, 10

*United States v. Aquilar*,

   No. 4:11cv298, 2012 WL 1600276 (D. Idaho May 7, 2012) ............................. 6

*United States v. Cuevas-Perez*,

   640 F.3d 272 (7th Cir. 2011), *cert. granted & judgment vacated*, 132 S. Ct. 1534 (2012) ........ 6

*United States v. Garcia*,

   474 F.3d 994 (7th Cir. 2007) ............................................................................ 6

*United States v. Heath*,

   No. 12cr4, 2012 WL 1574123 (D. Mont. May 3, 2012) .................................... 6

*United States v. Hernandez*,

   647 F.3d 216 (5th Cir. 2011) ............................................................................ 6

*United States v. Jones*,

   132 S. Ct. 945 (2012) ................................................................................. 2, 5, 6

*United States v. Leon*,

    No. 09cr452, 2012 WL 1081962 (D. Haw. Mar. 28, 2012)....................................................... 6

*United States v. Marquez*,

    605 F.3d 604 (8th Cir. 2010) .................................................................................................. 6

*United States v. Martinez*,

    No. 10cr339, 2012 WL 1378491 ............................................................................................ 6

*United States v. Maynard*,

    615 F.3d 544 (D.C. Cir. 2010), *aff'd sub nom. United States v. Jones*, 132 S. Ct. 945 (2012) .. 6

*United States v. McIver*,

    186 F.3d 1119 (9th Cir. 1999) ............................................................................................... 6

*United States v. Nwobi*,

    No. 10cr952, 2012 WL 769746 (C.D. Cal. Mar. 7, 2012) ......................................................... 6

*United States v. Pineda-Moreno*,

    591 F.3d 1212 (9th Cir. 2010), *cert. granted & judgment vacated*, 132 S. Ct. 1533 (2012)...... 6

*United States v. Walker*,

    771 F. Supp. 2d 803 & n.9 (W.D. Mich. 2011) ..................................................................... 11

*Wilkie v. Robbins*,

    551 U.S. 537 (2007)......................................................................................................... 7, 8

*Williams v. Dep't of Veterans Affairs*,

    879 F. Supp. 578 (E.D. Va. 1995) ......................................................................................... 8

*Wilson v. Layne*,

    526 U.S. 603 (1999)............................................................................................................ 5

*Wilson v. Libby*,

    535 F.3d 697 (D.C. Cir. 2008) ..................................................................................... 8, 9, 10

*Wolfe v. Strankman*,

    392 F.3d 358 n.2 (9th Cir. 2004) ........................................................................................ 14

<u>Statutes</u>

5 U.S.C. § 552a ...................................................................................................... passim

## OVERVIEW

This memorandum addresses the attempt by Plaintiff Yasir Afifi to sue Jennifer Kanaan, a Special Agent of the Federal Bureau of Investigation, in her individual capacity. Plaintiff alleges that the FBI put a tracking device on his car and monitored its location using the Global Positioning System (GPS). Plaintiff also alleges that the FBI collected and maintained records on him, including records compiled with the tracking device and accounts of his statements to the press about the device. Based on these allegations, Plaintiff has sued Agent Kanaan in her individual capacity and seeks, among other things, damages from Agent Kanaan's personal resources.

This Court should dismiss Plaintiff's claims against Agent Kanaan. Qualified immunity protects Agent Kanaan from Plaintiff's constitutional claims because at the time the FBI was allegedly tracking Plaintiff's car, courts had not clearly established how GPS monitoring might implicate constitutional rights. And if Plaintiff wants to sue based on the government's collection and maintenance of records, he must sue the government itself, not Agent Kanaan as an individual.

## BACKGROUND

Jennifer Kanaan is a Special Agent of the Federal Bureau of Investigation. Am. Compl. ¶ 17, ECF No. 21. Plaintiff alleges that Agent Kanaan "conspired with others" to "affix[]" a tracking device to his vehicle. *Id.* ¶¶ 1, 17. The device allegedly "collected, stored, and delivered locational information . . . regarding the whereabouts of [his] vehicle" and allowed agents "to continuously monitor [his] vehicle" using GPS. *Id.* ¶¶ 20-22.

Plaintiff discovered the tracking device when he took his vehicle to a local mechanic's shop. *Id.* ¶ 32. While the car was elevated, Plaintiff noticed the device and told the mechanic to pull it off the car. *Id.* ¶¶ 32-33. Plaintiff was so "[t]errified . . . that the device might be a pipe bomb," *id.* ¶ 2, that he decided to take it home and store it in his apartment, *id.* ¶ 34, where he "uploaded pictures of the device onto the internet," *id.* ¶ 35.

Plaintiff alleges that a few days later, Agent Kanaan, accompanied by other law enforcement officers, came to Plaintiff's apartment complex to retrieve the tracking device. *Id.*

¶ 36. As Plaintiff was leaving the complex in his car, officers pulled him over and asked him about his license plate being expired. *Id.* ¶¶ 37-38. Afterwards, Agent Kanaan and another agent approached Plaintiff and confirmed that he had recently taken his car to a mechanic, that he had found a tracking device, and that he still had the device. *Id.* ¶¶ 39-40. Plaintiff agreed to return the device and retrieved it from his apartment while the agents waited outside. *Id.* ¶ 45. After Plaintiff returned the device, he and the agents had a "discussion" during which Plaintiff came to believe that Agent Kanaan knew private details about his life. *Id.* ¶¶ 46-48.

Based on these experiences, Plaintiff came to believe that the FBI compiled a number of records about him that it still maintains. *Id.* ¶¶ 48-51. Plaintiff alleges that the FBI maintains records that include the "locational information" collected by the tracking device. *Id.* ¶¶ 50-51. This "locational information," Plaintiff alleges, "identifies the persons with whom [he] associated, the hospitals he attended, the organizations of which he was a member, the religious services he frequents, [and] the restaurants he went to with friends and families, among other activities and associations." *Id.* ¶ 51. Plaintiff also alleges that the FBI maintained records of his statements to media outlets after the discovery of the tracking device and the agents' visit. *Id.* ¶¶ 38-49; *see also* Compl., Ex. A, ECF No. 1 (reprinting media reports).[2] In those statements, Plaintiff "explicate[d] his opinion" on the "law enforcement practices" that he challenges in this lawsuit. *Id.* ¶ 49.

In March 2011, Plaintiff filed suit against two senior-level federal officials in their official capacities and "Unknown Agents . . . associat[ed] with the Federal Bureau of Investigation." Compl. ¶¶ 1, 11, 14-15. Plaintiff's official-capacity claims were claims against the United States itself. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Accordingly, the United States moved on behalf of the official-capacity defendants to dismiss and for summary judgment. *See* ECF No 7. Instead of responding to this motion, Plaintiff moved to stay proceedings until the Supreme Court decided *United States v. Jones*, 132 S. Ct. 945 (2012), a

---

[2] Plaintiff did not attach any exhibits to his Amended Complaint, so the exhibits to which the Amended Complaint refers are apparently those attached to his original Complaint.

case about use of a GPS tracking device. This Court stayed proceedings, and briefing on the United States' motion was suspended.

After this Court lifted the stay, Plaintiff moved for leave to file an Amended Complaint. Even though Plaintiff had known Agent Kanaan's name since before he filed suit and even mentioned her by name in his original Complaint, *see* Compl. ¶ 42, Plaintiff now contended that she was an "Unknown Agent[]" that he wanted to sue in her individual capacity, *see* Pl.'s Mot. To Amend at 4-5, ECF No. 19. The United States consented to the amendment, and Plaintiff's Amended Complaint was filed. *See* ECF Nos. 20, 21.

The Amended Complaint asserts three claims against Agent Kanaan. (Another claim in his complaint, denominated "Count III," is against the official-capacity defendants only.) In Count I, Plaintiff asserts that Agent Kanaan violated his Fourth Amendment rights by "subjecting [him] to a warrantless search." *See* Am. Compl. ¶¶ 53-58. He seeks damages from Agent Kanaan under the theory of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), in which the Supreme Court permitted a constitutional damages suit against several federal law enforcement agents in their individual capacities. *See* Am. Compl. ¶ 53. In Count II, Plaintiff invokes the Privacy Act, 5 U.S.C. § 552a, and seeks damages for the FBI's alleged maintenance of records about how he "exercises rights guaranteed to him by the First Amendment." *See* Am. Compl. ¶¶ 60-62. Finally, in Count III, Plaintiff asserts a claim against Agent Kanaan under the First Amendment based on allegations that "intrusions into [his] life" have "chill[ed]" his First Amendment activities and dissuaded others from associating with him. *See id.* ¶¶ 67-69.

## DISCUSSION

This Court should dismiss all of Plaintiff's claims against Agent Kanaan. This Court should dismiss Plaintiff's unlawful-search claim under the Fourth Amendment because qualified immunity protects Agent Kanaan. Qualified immunity protects a law enforcement agent when she does not violate any clearly established law, and when Agent Kanaan acted, the Fourth Amendment implications of GPS monitoring were far from clearly established. This Court should dismiss Plaintiff's claim under the Privacy Act because only a government agency, not an individual government employee, is a proper defendant on a Privacy Act claim. This Court

should dismiss Plaintiff's claim under the First Amendment because qualified immunity protects her and because the Privacy Act, not an individual-capacity damages action, provides the mechanism for Plaintiff to challenge the government's collection and maintenance of records about him. Finally, to the extent Plaintiff seeks an injunction or declaration against Agent Kanaan, this Court should dismiss those claims because Plaintiff must seek injunctive and declaratory relief from the government itself, not from an individual employee like Agent Kanaan.

I.    **QUALIFIED IMMUNITY PROTECTS AGENT KANAAN FROM PLAINTIFF'S FOURTH AMENDMENT CLAIM BECAUSE AT THE TIME SHE ACTED, IT WAS NOT CLEARLY ESTABLISHED THAT GPS MONITORING WAS A SEARCH SUBJECT TO THE FOURTH AMENDMENT.**

Plaintiff is attempting to sue Agent Kanaan in her individual capacity for purported Fourth Amendment violations. *See* Am. Compl. ¶¶ 17, 53-58. Individual-capacity claims against government employees "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To guard against these costs, the Supreme Court has granted government officials a qualified immunity that protects them "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity "'gives government officials breathing room to make reasonable but mistaken judgments.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011)). Its protection is "ample" and shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity requires dismissal of individual-capacity claims "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 131 S. Ct. at

2080.[3] A right is clearly established when "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 2083 (quoting *Anderson*, 483 U.S. at 640) (alterations in *al-Kidd*). Although "a case directly on point" is not required to clearly establish a right, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083.

Existing precedent does not put a constitutional question "beyond debate" when the courts of appeals have split on that question and the Supreme Court has not ruled. In *Wilson v. Layne*, for instance, the Supreme Court noted that the courts of appeals were split on a legal question and explained that "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." 526 U.S. 603, 618 (1999); *see also Reichle*, 132 S. Ct. at 2096-97; *Bame v. Dillard*, 637 F.3d 380, 386-88 (D.C. Cir. 2011). And in *Pearson v. Callahan*, the Court reiterated this rule and held that the "divergence of views" on a legal doctrine made it "improper to subject [the defendants] to money damages for their conduct." 555 U.S. at 245.

For the same reason, it would be improper to subject Agent Kanaan to money damages based on the alleged use of GPS monitoring in 2010. At that time, the courts of appeals diverged on whether monitoring via GPS was even a "search" subject to the Fourth Amendment at all. Two courts of appeals — including the court of appeals with jurisdiction over the area where the alleged monitoring took place — had held squarely that GPS monitoring was not a search. *See*

---

[3] Although courts may address either of these two requirements first, *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009), this is a case in which it makes sense to proceed directly to the question whether the right asserted by Plaintiff was clearly established. Courts usually avoid deciding constitutional questions unnecessarily. *See Reichle v. Howard*, 132 S. Ct. 2088, 2093 (2012). And in *Pearson*, the Court explained that suits involving an assertion of qualified immunity at the pleadings stage can be poor vehicles for deciding constitutional questions. 555 U.S. at 238-39. Courts must resolve qualified immunity at the "earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam), often with no factual development beyond a plaintiff's allegations. *Pearson*, 555 U.S. at 227. Questions about the precise scope of constitutional guarantees are better left to criminal cases or other proceedings in which the facts are better developed. *Id.* at 242-43. For example, in this context, courts can develop the constitutional rules governing GPS monitoring through rulings on motions to suppress, *e.g.*, *United States v. Jones*, 132 S. Ct. 945 (2012).

*United States v. Pineda-Moreno*, 591 F.3d 1212, 1215-17 (9th Cir. 2010), *cert. granted & judgment vacated*, 132 S. Ct. 1533 (2012); *United States v. Garcia*, 474 F.3d 994, 995-98 (7th Cir. 2007); *cf. United States v. Marquez*, 605 F.3d 604, 609-10 (8th Cir. 2010) (finding no Fourth Amendment where police installed GPS device based on reasonable suspicion); *United States v. McIver*, 186 F.3d 1119, 1126 (9th Cir. 1999) (holding placement of GPS device on vehicle was neither search nor seizure). Only one court of appeals had held to the contrary. *See United States v. Maynard*, 615 F.3d 544, 556 (D.C. Cir. 2010), *aff'd sub nom. United States v. Jones*, 132 S. Ct. 945 (2012). And after this lone contrary opinion, two courts of appeals again rejected the idea that GPS monitoring was a search. *See United States v. Hernandez*, 647 F.3d 216, 221 (5th Cir. 2011); *United States v. Cuevas-Perez*, 640 F.3d 272, 275-76 (7th Cir. 2011) (opinion of Cudahy, J.), *cert. granted & judgment vacated*, 132 S. Ct. 1534 (2012); *Cuevas-Perez*, 640 F.3d at 276 (Flaum, J., concurring). Because the courts of appeals were split at the time of the challenged conduct, the law cannot have been clearly established on whether GPS monitoring was a search at all, much less an unlawful search. Therefore, it would be unfair to subject Agent Kanaan to money damages for failing to predict future developments on this "Fourth Amendment frontier," *Cuevas-Perez*, 640 F.3d at 275 (Cudahy, J.). The lack of clearly established law entitles her to qualified immunity, and Plaintiff's Fourth Amendment claim should be dismissed.[4]

---

[4] Courts have reached similar conclusions in denying motions to suppress evidence obtained through GPS monitoring. Just as qualified immunity protects an officer whose actions are objectively reasonable in light of clearly established legal rules, *see Messerschmidt*, 132 S. Ct. at 1245, the "good faith" exception to the exclusionary rule exempts from suppression evidence obtained through "searches conducted in objectively reasonable reliance on binding appellate precedent," even if that search would violate the Fourth Amendment as interpreted in cases decided after the search, *see Davis v. United States*, 131 S. Ct. 2419, 2423-24 (2011). Applying this good-faith exception, courts have refused to suppress evidence obtained through GPS monitoring that occurred before the Supreme Court decided *Jones*. *See, e.g., United States v. Aquilar*, No. 4:11cv298, 2012 WL 1600276, at *2 (D. Idaho May 7, 2012); *United States v. Heath*, No. 12cr4, 2012 WL 1574123, at *1 (D. Mont. May 3, 2012); *United States v. Martinez*, No. 10cr339, 2012 WL 1378491, at *2-3; *United States v. Amaya*, No. 11cr4065, 2012 WL 1188456, at *4 (N.D. Iowa Apr. 10, 2012), *withdrawn in part on other grounds*, 2012 WL 1523045 (N.D. Iowa May 1, 2012); *United States v. Nwobi*, No. 10cr952, 2012 WL 769746, at *2-4 (C.D. Cal. Mar. 7, 2012); *United States v. Leon*, No. 09cr452, 2012 WL 1081962, at *4-6 (D. Haw. Mar. 28, 2012).

II.     **PLAINTIFF CANNOT SUE AGENT KANAAN IN HER INDIVIDUAL CAPACITY UNDER THE PRIVACY ACT BECAUSE THE PRIVACY ACT DOES NOT CREATE A CAUSE OF ACTION AGAINST INDIVIDUAL FEDERAL EMPLOYEES.**

Plaintiff has also attempted to sue Agent Kanaan under the Privacy Act, 5 U.S.C. § 552a. *See* Am. Compl. at 16 (directing Privacy Act claims at "all Defendants"). The Privacy Act does not provide for a civil action against individuals. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006). The Act only authorizes a civil action against an "agency." 5 U.S.C. § 552a(g)(1). Therefore, Plaintiffs' claims against Agent Kanaan under the Privacy Act should be dismissed.

III.    **PLAINTIFF HAS NOT STATED A CLAIM AGAINST AGENT KANAAN UNDER THE FIRST AMENDMENT.**

Plaintiff has failed to state a viable First Amendment claim against Agent Kanaan for two reasons. First, he has no cause of action to sue Agent Kanaan for damages directly under the First Amendment, and this Court should decline to create one in light of the comprehensive statutory scheme Congress adopted in the Privacy Act. Second, even if Plaintiff had a cause of action, Agent Kanaan would be immune.

A.     **Plaintiff lacks a cause of action to sue Agent Kanaan under the First Amendment because the comprehensive nature of the Privacy Act precludes creation of a parallel cause of action against individual employees.**

Plaintiff seeks to hold Agent Kanaan personally liable in damages for alleged violations of the First Amendment. A damages action directly under the Constitution, commonly called a "*Bivens* action," is not expressly authorized by statute, but rather created by the judiciary. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Such a "freestanding damages remedy for a claimed constitutional violation" is "not an automatic entitlement no matter what other means there may be to vindicate a protected interest." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Congress "'is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." *Wilkie*, 551 U.S. at 562 (quoting *Bush v. Lucas*, 462 U.S. 367, 378-80, 389 (1983)). Therefore, *Bivens* actions are "disfavored," *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009), and "in most instances . . . unjustified," *Wilkie*, 551 U.S. at 550. The Supreme Court has never extended the theory of *Bivens* to claims brought under the

First Amendment. *See Reichle*, 132 S. Ct. at 2093 n.4. Indeed, since 1980, the Supreme Court has refused to extend *Bivens* into any new context. *See Minneci v. Pollard*, 132 S. Ct. 617, 622-23 (2012) (collecting cases).

In determining whether to create a *Bivens* action, courts must "'pay[] particular heed . . . to any special factors counseling hesitation before authorizing a new kind of federal litigation.'" *Wilkie*, 551 U.S. at 550 (quoting *Bush*, 462 U.S. at 378). The Constitution charges Congress, not the Judiciary, with designing legislative schemes that accommodate compromises among sometimes conflicting public goals. *See Schweiker v. Chilicky*, 487 U.S. 412, 429 (1988); *Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (en banc). Therefore, "[o]ne 'special factor' that precludes creation of a *Bivens* remedy is the existence of a comprehensive remedial scheme" to address challenged government conduct. *Wilson v. Libby*, 535 F.3d 697, 705 (D.C. Cir. 2008).

As courts have repeatedly and consistently held, the Privacy Act is the sort of comprehensive scheme that precludes the creation of a *Bivens* action based on the government's collection, maintenance, and dissemination of personal information. *See, e.g.*, *Wilson*, 535 F.3d at 710; *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 274-75 (D.C. Cir. 2003), *aff'g in relevant part* No. 00-1912, 2001 WL 34360430, at *8-12 (D.D.C. Sept. 20, 2001); *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693-94 (6th Cir. 2002); *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 116-17 (D.D.C. 2005); *Williams v. Dep't of Veterans Affairs*, 879 F. Supp. 578, 585-88 (E.D. Va. 1995). For instance, in *Wilson v. Libby*, a CIA operative sued several government officials for disclosing her covert status. *See* 535 F.3d at 701, 707. The D.C. Circuit explained that the existence of the Privacy Act precluded the creation of *Bivens* claims directed at the government's disclosure of information. *Id.* at 705-11. In *Downie*, the court held that the Privacy Act precluded the creation of *Bivens* claims directed at the allegedly retaliatory creation, maintenance, and dissemination of purportedly false records. *See* 301 F.3d at 694-99. And in *Hatfill*, the court held that the Privacy Act precluded the creation of *Bivens* claims based on the government's dissemination of information that interfered with the plaintiff's ability to find employment. *See* 404 F. Supp. 2d at 107-08, 115.

8

Just as the existence of the Privacy Act precluded the claims in *Wilson*, *Chung*, *Downie*, and *Hatfill*, so too does it preclude Plaintiff's proposed First Amendment claim in this case. The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . . maintain no record describing how any individual exercises rights guaranteed by the First Amendment . . . unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). The term "maintain" includes the terms "maintain, collect, use, or disseminate." *Id.* § 552a(a)(3). The Privacy Act also authorizes an action for damages when the government fails to comply with its terms. *See* 5 U.S.C. § 552a(g)(1). Thus, the Privacy Act already addresses the government's collection, maintenance, use, and dissemination of records describing an individuals' exercise of his First Amendment rights.

Plaintiff's proposed *Bivens* action would address precisely the same government conduct. Plaintiff proposes the creation of a damages action to address the alleged "collect[ion of] revealing personal information on [him] and his lawful associations." Am. Compl. ¶ 67. And he proposes that this damages action extend to compensation for his "fear of disclosure of personal information that Defendants have collected and now maintain." *Id.* ¶ 68. Because Congress has already created a mechanism to address the government's collection, maintenance, and disclosure of personal information, this Court should not create a parallel *Bivens* claim against individual agents to address the same conduct.

Plaintiff cannot avoid the preclusive effect of the Privacy Act through conclusory allegations of improper motive, *see* Am. Compl. ¶ 69. As the court explained in *Downie*, the Privacy Act precludes a *Bivens* action even when a plaintiff alleges that the government's creation or dissemination of information was improperly motivated. *See* 301 F.3d at 697. Nor can Plaintiff avoid the preclusive effect of the Privacy Act through conclusory allegations that the government's collection and maintenance of information about him cost him employment, *see* Am. Compl. ¶ 69. The plaintiff in *Hatfill* also alleged that the government's handling of information about him scared off employers, *see* 404 F. Supp. 2d at 107-08, and the court nonetheless held that the Privacy Act precluded the creation of a separate *Bivens* action, *see id.* at 116-17.

9

As detailed in the Motion to Dismiss by Defendants Holder and Mueller, Plaintiff cannot pursue a Privacy Act claim because all the information at issue in this case is "pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). But just because Plaintiff has no remedy under the Privacy Act does not mean that this Court should create a *Bivens* claim. The decision whether to create a *Bivens* action "does not turn on whether the statute provides a remedy to the particular plaintiff for the particular claim he or she wishes to pursue." *Wilson*, 535 F.3d at 709; *see also Bush*, 462 U.S. at 380; *Schweiker*, 487 U.S. at 423. In *Wilson v. Libby*, for instance, the D.C. Circuit held that the Privacy Act precluded a proposed *Bivens* claim even though explicit statutory exceptions meant that the plaintiffs in that case had no Privacy Act claim against the government. 535 F.3d at 707-08. The court explained that the question was not "whether there is a remedy," but "'who should decide whether such a remedy should be provided'" — Congress or the Courts. *Id.* at 709 (quoting *Bush*, 462 U.S. at 380). If Congress has created a comprehensive system, Congress' decision to omit a particular remedy from that system was "'not inadvertent[],'" and Congress has not "'plainly expressed an intention that the courts preserve *Bivens* remedies,'" then courts "must withhold their power to fashion damages remedies." *Id.* at 706 (quoting *Spagnola*, 859 F.2d at 228). Indeed, it is when Congress has excluded a potential remedy from a statutory scheme like the Privacy Act that courts "must most refrain from providing one because it is in those situations that 'appropriate judicial deference' is especially due to the considered judgment of Congress that certain remedies are not warranted." *Id.* at 709 (quoting *Schweiker*, 487 U.S. at 423).

Plaintiff's inability to pursue a Privacy Act claim in this case does not result from congressional inadvertence. In enacting the Privacy Act, Congress considered the issues surrounding the government's collection, maintenance, and dissemination of purportedly private information, including "constitutional implications and concerns respecting privacy matters" and the threat to privacy posed by "'increasing use of computers and sophisticated information technology.'" *Chung*, 2001 WL 34360430, at *11 (quoting Privacy Act of 1974, Pub. L. No. 93-579, § 2(A)(2), 88 Stat. 1896 (Dec. 31, 1974)). Indeed, Congress specifically considered and addressed the collection, maintenance, and dissemination of records about "how any individual

exercises rights guaranteed by the First Amendment," 5 U.S.C. § 552a(e)(7) — the very sort of conduct Plaintiff's proposed First Amendment *Bivens* remedy would address. Yet Congress did not make the collection, maintenance, and dissemination of such records actionable when they are "pertinent to and within the scope of an authorized law enforcement activity." *Id*. Nor did Congress explicitly keep open the possibility of a supplemental *Bivens* action. *See Chung*, 2001 WL 34360430, at *11. Therefore, whether Plaintiff could actually prevail on a Privacy Act claim is irrelevant. What matters is that Congress has created a comprehensive system to address the sort of conduct Plaintiff wants to make actionable through an extension of the *Bivens* theory. Because Congress has created such a comprehensive system in the Privacy Act, this Court should decline to recognize Plaintiff's proposed *Bivens* action and instead dismiss his First Amendment claim.

### B. Agent Kanaan is immune from Plaintiff's First Amendment claims.

Even if this Court were to create the First Amendment *Bivens* claim plaintiff proposes, qualified immunity would protect Agent Kanaan from that claim. To overcome qualified immunity, a plaintiff must plead facts showing violation of a clearly established right, and for a right to be clearly established, its contours must be "'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 131 S. Ct. at 2080, 2083 (quoting *Anderson*, 483 U.S. at 640). When Agent Kanaan acted, courts had not reached a consensus on the question whether use of GPS monitoring would violate the Fourth Amendment, much less Plaintiff's far more attenuated theory that use of GPS could violate the First Amendment. *See supra* Part I. Even those courts that have noted First Amendment theories like Plaintiff's have declined to adopt them. *See United States v. Walker*, 771 F. Supp. 2d 803, 813-14 & n.9 (W.D. Mich. 2011) (rejecting First Amendment argument for suppression of GPS monitoring based on waiver and lack of sufficient allegations of chill); *In re Application of United States*, No. 10-2188, 2011 WL 3423370, at *9 n.5 (D. Md. Aug. 3. 2011) (in case involving tracking of cell phone, citing but declining to analyze academic discussion of First Amendment implications of GPS monitoring). Given this unsettled state of the law, a reasonable official could understandably have failed to predict that the use of GPS monitoring might

implicate the First Amendment. Qualified immunity therefore protects Agent Kanaan from any claim that she used GPS monitoring in violation of the First Amendment.

Plaintiff's conclusory references to improper motive, "chill," and "retaliation," Am. Compl. ¶¶ 4, 69, do not make his First Amendment claim any more viable. Qualified immunity requires dismissal of individual-capacity claims "unless a plaintiff pleads facts showing . . . that the official violated a statutory or constitutional right." *al-Kidd*, 131 S. Ct. at 2080. Pleading facts means offering "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Neither "'[l]abels and conclusions'" nor "'naked assertion[s]' devoid of 'further factual enhancement'" are sufficient. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (alteration in *Iqbal*). And stating a claim for violation of a constitutional right, in the context of a First Amendment improper-motive claim, means "plead[ing] sufficient factual matter" to show that a defendant took an action "for the purpose of discriminating." *Id.* at 677.

For instance, in *Ashcroft v. Iqbal*, the Supreme Court rejected as insufficient a complaint asserting First Amendment improper-motive claims. The plaintiff had alleged that the defendants at issue "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" *Id.* at 680. But the complaint included no factual allegations that would render this conclusion plausible. *See id.* at 680-83. And the "conclusory nature of [these] allegations . . . disentitle[d] them to the presumption of truth." *Id.* at 681; *see also Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (bare allegation that removal from grand jury was an act of discrimination did not suffice to state claim).

Plaintiff's allegations of improper purpose are even more conclusory than those rejected in *Iqbal*. Plaintiff asserts that "intrusions" were "initiated as a result of his heritage, lawful associations, and disclosed political views." Am. Compl. ¶ 69. But he includes no factual allegations whatsoever to support this conclusion. He does not even bother to allege what his

supposedly objectionable "heritage, lawful associations, and disclosed political views" were or why they could conceivably have mattered to any federal law enforcement agent. *Id.*

Plaintiff's allegations of "objective chill," Am. Compl. ¶ 69, are similarly conclusory. Plaintiff alleges that he feels "fear . . . when expressing his political views and maintaining certain lawful associations" and that others have avoided associating with him. *Id.* But "'[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.'" *Hatfill*, 404 F. Supp. 2d at 119 (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)); *accord Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 57-58 (D.D.C. 2008). Plaintiff does not allege any specific instance in which he has changed his behavior or someone else has declined to associate with him. And he continues to criticize publicly the government's alleged conduct in this very lawsuit. *Cf. Hatfill*, 404 F. Supp. 2d at 118-19 (rejecting First Amendment "chill" claim where plaintiff "continued to protest the government's actions" and "s[ought] redress for alleged wrongs"). Therefore, this Court should disregard his conclusory allegations of an impermissible "chill."

Plaintiff's passing reference to "retaliation," Am. Compl. ¶ 4, does not help him state a First Amendment claim either. Plaintiff alleges that "FBI agents contacted Mr. Afifi's counsel and disclosed their desire to further interrogate Mr. Afifi" in "retaliation for Mr. Afifi exercising his rights under the Freedom of Information Act." *Id.* Plaintiff does not (and cannot) allege that anything other than this contact with his attorney was retaliatory, for he does not (and cannot) allege that he submitted a FOIA request until after the alleged GPS monitoring and after Agent Kanaan's alleged visit to retrieve the tracking device. *See Hatfill*, 404 F. Supp. 2d at 118 (pointing out that government conduct that pre-dates speech can "bear no relevance" to a retaliation claim). To the extent he intends to assert a First Amendment retaliation claim based on an unidentified agent's request for an interview, he fails to state a viable claim against Agent Kanaan for several reasons. First, he fails to allege that Agent Kanaan had anything to do with the alleged contact or that she was even aware of his FOIA request. In a *Bivens* suit, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Plaintiff cannot hold Agent Kanaan liable for the alleged

13

misconduct of other, unspecified agents. *See id.* Second, to prevail on a First Amendment retaliation claim, Plaintiff must show that the supposedly retaliatory actions in question "'were motivated or substantially caused by" exercise of a First Amendment right. *See Hatfill*, 404 F. Supp. 2d at 118 (quoting *Curley*, 268 F.3d at 73). Even if having one's attorney file a FOIA request were conduct covered by the First Amendment, Plaintiff provides no factual allegations to support his conclusory assertion — "on information and belief," Am. Compl. ¶ 4 — that the motive for the contact with Plaintiff's attorney was retaliatory. *Cf. Iqbal*, 556 U.S. at 680-81. Third, to prevail on a First Amendment retaliation claim, Plaintiff must also show that the action in question "'effectively chilled the exercise of his First Amendment right.'" *Hatfill*, 404 F. Supp. 2d at 118 (quoting *Curley*, 268 F.3d at 73). Plaintiff does not allege any facts that could support the conclusion that the request to his attorney affected his exercise of First Amendment rights in any way. Therefore, this Court should dismiss any retaliation claim Plaintiff intends to bring under the First Amendment.

## IV.   PLAINTIFF CANNOT SEEK AN INJUNCTION OR DECLARATION AGAINST AGENT KANAAN AS AN INDIVIDUAL.

In his prayer for relief, Plaintiff seeks an injunction and a declaratory judgment against unspecified "Defendants." Am. Compl. at 19. To the extent Plaintiff is seeking an injunction or declaration against Agent Kanaan as an individual, this Court should dismiss those claims. Injunctions and declarations designed to affect the conduct of the government are available only in an official-capacity suit. *See Leyland v. Edwards*, 797 F. Supp. 2d 7, 12 (D.D.C. 2011); *accord Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004); *Kirby v. City of Elizabeth*, 388 F.3d 440, 452 n.10 (4th Cir. 2004); *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993); *Scott v. Flowers*, 910 F.2d 201, 213 n.25 (5th Cir. 1990); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989). Therefore, this Court should dismiss any claims for declaratory or injunctive relief Plaintiff may have intended to bring against Agent Kanaan as an individual.

## CONCLUSION

Because none of Plaintiff's claims against Agent Kanaan is viable, this Court should dismiss those claims with prejudice.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

RUPA BHATTACHARYYA
Director, Torts Branch

ANDREA W. McCARTHY
Senior Trial Counsel,
Office of Constitutional & Specialized Torts

/s/     Brant S. Levine
Brant S. Levine, District of Columbia Bar No. 472970
Trial Attorney
United States Department of Justice, Civil Division
Office of Constitutional & Specialized Torts
P.O. Box 7146, Washington, D.C. 20044
Tel: 202-616-4373; Fax: 202-616-4314
E-Mail:  Brant.Levine@usdoj.gov

*Attorneys for Defendant Jennifer Kanaan*

September 11, 2012