**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                            )
YASIR AFIFI,                                )
                                            )
                    Plaintiff,              )
                                            )         CIVIL ACTION NO.
          v.                                )         1:11-00460 (BAH)
                                            )         FILED UNDER SEAL
ERIC H. HOLDER *et al.*,                    )
                                            )
                    Defendants.             )
———————————————————————)

## DEFENDANTS HOLDER AND MUELLER'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT ON PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Rules 12(b)(1), 12(b)(6), and 56(a) of the Federal Rules of Civil Procedure, defendants Eric Holder and Robert Mueller respectfully move this Court to dismiss Plaintiff's Amended Complaint as to Count III and for summary judgment as to Count II, which are the only claims asserted against them. The reasons for this Motion are set forth in the accompanying Memorandum in Support of Defendants Holder and Mueller's Motion to Dismiss and for Summary Judgment.

Dated: September 11, 2012                    Respectfully submitted,

                                             STUART F. DELERY
                                             Acting Assistant Attorney General

                                             RONALD C. MACHEN
                                             United States Attorney

                                             VINCENT M. GARVEY
                                             Deputy Director

                                             ANTHONY J. COPPOLINO
                                             Special Litigation Counsel

                                             _____
                                             Lynn Y. Lee
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             Tel: (202) 305-0531
                                             Fax: (202) 616-8470
                                             lynn.lee@usdoj.gov

                                             *Attorneys for Defendants Holder and
                                             Mueller in Their Official Capacities*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————————

| | |
|---|---|
| YASIR AFIFI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ERIC H. HOLDER, Attorney General of | ) |
| the United States; ROBERT MUELLER, | ) |
| Director of the Federal Bureau of Investigation | ) |
| (in their official capacities), *et al*. | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NO.
1:11-00460 (BAH)
FILED UNDER SEAL

———————————————————————————)

## MEMORANDUM IN SUPPORT OF DEFENDANTS HOLDER AND MUELLER'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT ON PLAINTIFF'S AMENDED  COMPLAINT

Dated: September 11, 2012

STUART F. DELERY
Acting Assistant Attorney General

RONALD C. MACHEN
United States Attorney

VINCENT M. GARVEY
Deputy Director

ANTHONY J. COPPOLINO
Special Litigation Counsel

_____

Lynn Y. Lee
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 305-0531
Fax: (202) 616-8470
lynn.lee@usdoj.gov

*Attorneys for Defendants Holder and*
*Mueller in Their Official Capacities*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT..........................................................................................................................4

      I.      PLAINTIFF'S APA CLAIM (COUNT III) SHOULD BE DISMISSED
              FOR LACK OF STANDING ..................................................................................4

      II.     PLAINTIFF'S APA CLAIM SHOULD ALSO BE DISMISSED
              BECAUSE IT DOES NOT CHALLENGE AN
              AGENCY ACTION REVIEWABLE UNDER THE APA. ...................................7

      III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR
              DEFENDANTS ON PLAINTIFF'S PRIVACY ACT CLAIM
              (COUNT II) BECAUSE THE RECORDS AT ISSUE ARE
              PERTINENT TO AND WITHIN THE SCOPE OF AN
              AUTHORIZED LAW ENFORCEMENT ACTIVITY. ......................................11

      IV.    THE PRIVACY ACT FORECLOSES PLAINTIFF FROM
              OBTAINING A REMEDY OF EXPUNGEMENT. .............................................15

             A.      Plaintiff Has Not Brought a Privacy Act Action For
                      Which Injunctive Relief is Available.........................................................15

             B.      The Records At Issue Are Exempt From the Amendment
                      Provisions of the Privacy Act and Therefore Are Not Subject
                      to Expungement……………………………………………………...........18

CONCLUSION………………………………………………………………….................21

# TABLE OF AUTHORITIES

## CASES

*ACLU v. NSA*,
    493 F.3d 644 (6th Cir. 2007) ........................................................................... 9, 10

*Al-Owhali v. Ashcroft*,
    279 F. Supp. 2d 13 (D.D.C. 2003) ........................................................................ 6

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) ............................................................................................ 11

*Bassiouni v. FBI*,
    436 F.3d 712 (7th Cir. 2006) ......................................................................... 12, 18

*Bennett v. Spear*,
    520 U.S. 154 (1997) ............................................................................................ 10

*Benoit v. Dep't of Agric.*,
    608 F.3d 17 (D.C. Cir. 2010) ............................................................................... 4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................ 11

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................................ 5

*Clarkson v. IRS*,
    678 F.2d 1368 (11th Cir. 1982) .......................................................................... 17

*Comm. in Solidarity with the People of El Salvador v. Sessions*,
    738 F. Supp. 544 (D.D.C. 1990), *aff'd*, 929 F.2d 742 (D.C. Cir. 1991) ................. 17

*Ctr. for Law & Educ. v. Dep't of Educ.*,
    315 F. Supp. 2d 15 (D.D.C. 2004), *aff'd*, 396 F.3d 1152 (D.C. Cir. 2005) ............. 7

*Doe v. FBI*,
    936 F.2d 1346 (D.C. Cir. 1991) ...........................................................................19

*FAA v. Cooper*,
    132 S. Ct. 1441 (2012) ........................................................................................ 17

*Haase v. Sessions*,
    835 F.2d 902 (D.C. Cir. 1987) .............................................................................. 5

*Haase v. Sessions,*
   893 F.2d 370 (D.C. Cir. 1990) ............................................................................ 17

*Herbert v. Nat'l Acad. of Sciences,*
   974 F.2d 192 (D.C. Cir. 1992) .............................................................................. 6

*J. Roderick MacArthur Found. v. FBI,*
   102 F.3d 600 (D.C. Cir. 1996) ...................................................................... 12, 14

*Jabara v. Webster,*
   691 F.2d 272 (6th Cir. 1982) .............................................................................. 12

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992).......................................................................................... 5, 7

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990).......................................................................................... 9, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)............................................................................................ 11

*Maydak v. United States,*
   363 F.3d 512 (D.C. Cir. 2004) ............................................................................ 12

*Nagel v. U.S. Dep't of Health, Educ. & Welfare,*
   725 F.2d 1438 (D.C. Cir. 1984) .......................................................................... 18

*Nat'l Mar. Union v. Dole,*
   No. 86-1295, 1987 WL 10495 (D.D.C. Apr. 27 1987)........................................ 7

*Norton v. S. Utah Wilderness Alliance,*
   542 U.S. 55 (2004)................................................................................................ 8

*O'Shea v. Littleton,*
   414 U.S. 488 (1974).............................................................................................. 8

*Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.,*
   123 F.3d 111 (3d Cir. 1997 2004)........................................................................ 5

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
   324 F.3d 726 (D.C. Cir. 2003) ............................................................................ 10

*Risley v. Hawk,*
   108 F.3d 1396 (D.C. Cir. 1997) .......................................................................... 16

*Rizzo v. Goode*,
    423 U.S. 362 (1976)........................................................................................................ 5

*Socialist Workers Party v. Att'y General*,
    642 F. Supp. 1357 (S.D.N.Y. 1986)........................................................................ 17

*United States v. Jones*,
    132 S. Ct. 945 (2012).................................................................................................... 3

*Warth v. Seldin*,
    422 U.S. 490 (1975)........................................................................................................ 7

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)........................................................................................................ 5

## STATUTES

5 U.S.C. § 551 ............................................................................................................... 8

5 U.S.C. § 552a ...................................................................................................... passim

5 U.S.C. § 702 ............................................................................................................... 8

5 U.S.C. § 704 .......................................................................................................... 8, 10

5 U.S.C. § 706 ............................................................................................................... 8

28 U.S.C. § 533……………………………………………………………...........13

## FEDERAL REGULATIONS

28 C.F.R. § 0.85...........................................................................................................13

28 C.F.R. § 16.96………..……………………………..……………………..…………19

**INTRODUCTION**

Plaintiff Yasir Afifi brings this suit against Attorney General Eric Holder and Director of the Federal Bureau of Investigation ("FBI") Robert Mueller in their official capacities, as well as FBI agent Jennifer Kanaan and unknown FBI agents in their individual capacities, challenging the placement of a tracking device on his car without a warrant and the maintenance of records derived from that device.  Plaintiff contends that defendants' actions violated his rights under the First and Fourth Amendments, the Administrative Procedure Act ("APA"), and the Privacy Act, though he asserts only the APA and Privacy Act claims against defendants Holder and Mueller.  Neither of these claims can lie against defendants Holder and Mueller.

First, plaintiff has no standing to bring his APA claim, which seeks prospective injunctive and declaratory relief, because he has not shown that he is realistically threatened with any concrete or imminent future injury.  Additionally, even if plaintiff had standing to assert his APA claim, he fails to identify any agency action reviewable under the APA.

Second, the Court should grant summary judgment for defendants on plaintiff's Privacy Act claim, which alleges that defendants maintain records describing how plaintiff exercised his rights under the First Amendment in violation of the Act.  All FBI records relating to plaintiff, including any records that might be construed as describing First Amendment-protected activities, were compiled and maintained pursuant to an authorized law enforcement activity, as expressly permitted by the Act.

Finally, plaintiff requests a remedy that the Court cannot grant — namely, the expungement of all records derived from the tracking device — because it is foreclosed by the Privacy Act.

For these reasons, the Court should dismiss plaintiff's suit in its entirety as to defendants Holder and Mueller.

**BACKGROUND**

This case arises out of the placement of a Global Positioning System tracking device ("GPS device") on plaintiff's car by the FBI.  Amended Complaint, Apr. 25, 2012, ECF No. 21, ¶¶ 1, 19, 31.  The GPS device allowed the FBI to track the movement of plaintiff's car and record all locations to which he traveled.  *See id.* ¶¶ 20-23.

On October 3, 2010, plaintiff discovered the GPS device at a car repair shop, had it removed, and took it home.  *Id.* ¶¶ 2, 32-34.  Plaintiff posted pictures of the device on the Internet and learned that it was a "GPS receiver sold exclusively to law enforcement agencies."  *Id.* ¶ 35.  Two days later, FBI agents came to plaintiff's residence, waited for him to get into his car, and pulled him over near his apartment complex.  *Id.* ¶¶ 3, 36-39.  The agents interrogated plaintiff about the GPS device and other matters, and ultimately persuaded plaintiff to return the device to them.  *Id.* ¶¶ 3, 40-45.

The FBI agents thereafter prepared an internal report ("Report") that described their retrieval of the GPS device.  *Id.* ¶¶ 48-49 and Exhibit A to Complaint.[1]  Plaintiff subsequently submitted a Freedom of Information Act ("FOIA") request to the FBI.  *Id.*

---

[1] Exhibit A to plaintiff's original Complaint, Mar. 3, 2011, ECF No. 1, to which the Amended Complaint also refers, includes only the first page of a redacted version of the Report, which the FBI disclosed to plaintiff in response to his Freedom of Information Act request, along with certain news articles.  This document, in the form it was provided to plaintiff, is attached as Exhibit 1 to the Declaration of Joel Dabisch, filed herewith.

¶ 4.  On January 26, 2011, plaintiff received in response certain FBI records, including a redacted version of the Report and certain news articles based on plaintiff's account of the incident, to which the Report made reference.  *Id.* ¶¶ 4, 49.

On March 2, 2011, plaintiff filed a complaint with this Court against defendants Holder and Mueller in their official capacities and unknown agents in their individual capacities, claiming that defendants' alleged actions violated his rights under the Fourth Amendment and the Privacy Act, constituted unlawful agency action under the APA, and had a "chilling" effect on the exercise of his First Amendment rights.  Defendants Holder and Mueller moved to dismiss and for summary judgment on June 16, 2011.  The Court subsequently stayed the case pending the Supreme Court's disposition in *United States v. Jones*, 132 S. Ct. 945 (2012), of the issue of whether and to what extent GPS monitoring of a vehicle's movements constitutes a "search" under the Fourth Amendment.

Following the issuance of the Supreme Court's opinion in *Jones*, plaintiff moved to amend his complaint primarily to add a named defendant, FBI Agent Jennifer Kanaan, in her individual capacity.  Defendants Holder and Mueller did not oppose the amendment, and the Amended Complaint was filed on April 25, 2012.  In the Amended Complaint, plaintiff specified that he was asserting his Fourth Amendment claim (Count I) and First Amendment "chill" claim (Count IV) against only the individual capacity defendants and the APA claim (Count III) against the official capacity defendants.  As before, Plaintiff seeks an injunction ordering defendants to refrain from attaching any more tracking devices to his vehicle without a warrant, abandon its policy of using such devices without a warrant, and expunge all records (and analysis thereof) collected from the GPS device that was placed on his car.  Am. Compl. at 19 (Prayer for Relief ¶ a).

Plaintiff also seeks a declaratory judgment that defendants' alleged actions and policies violate the First, Fourth, and Fifth[2] Amendments and the Privacy Act, as well as damages for emotional pain, suffering, reputational harm, economic injury, and anxiety. *Id.* at 19 (Prayer for Relief ¶¶ c, d).

## ARGUMENT

### I.   PLAINTIFF'S APA CLAIMS (COUNT III) SHOULD BE DISMISSED FOR LACK OF STANDING.

Plaintiff's APA claim (Count III) asserts that "all official capacity" defendants violated his constitutional rights.  Because sovereign immunity bars constitutional claims against federal employees in their official capacities, *see Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20-21 (D.C. Cir. 2010), plaintiff is limited to non-monetary relief for these claims.  Plaintiff seeks various equitable remedies, including an injunction ordering defendants "to refrain from once again attaching a tracking device to Mr. Afifi's vehicle without a search warrant" and "to abandon its policy of authorizing, directing, tolerating, or otherwise allowing tracking devices to be used without a search warrant," as well as a declaratory judgment stating that defendants' actions and policies violate the First, Fourth, and Fifth Amendments and the Privacy Act.  Am. Compl. at 19 (Prayer for Relief).  However, plaintiff has failed to establish standing to obtain such relief.[3]

---

[2] Outside of the prayer for relief and the title of the Amended Complaint (which lists, in parentheses, "Violation of First, Fourth and Fifth Amendment Rights, the Privacy Act and the Administrative Procedure Act"), nowhere in the Amended Complaint does plaintiff attempt to state a claim for violation of the Fifth Amendment.

[3] Plaintiff also requests the Court to order defendants to "expunge all records collected via the warrantless search as well as all analysis of those records."  *Id.* at 19 (¶ a(iii)). Expungement is not available as a remedy either, however, for the reasons discussed *infra* in Section IV.

To establish standing, a plaintiff must allege an injury that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). Further, it is well settled that past injuries do not suffice to confer standing to seek prospective relief. *Lyons*, 461 U.S. at 103 (citing *O'Shea v. Littleton*, 414 U.S. 488 (1974), and *Rizzo v. Goode*, 423 U.S. 362 (1976)). Rather, a plaintiff seeking such relief must demonstrate a "real and immediate threat" that he will suffer the same injury in the future. *Lyons*, 461 U.S. at 105, 110; *see also Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir 1987) (holding that plaintiff who claimed he was victim of FBI policy of subjecting travelers returning from Nicaragua to intrusive intelligence-gathering border searches was required to show he was likely to travel again to Nicaragua in foreseeable future and was likely to be subjected to alleged policy upon return). This "imminence requirement ensures that courts do not entertain suits based on speculative or hypothetical harms," *Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111 (3d Cir. 1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)), and applies to both injunctive and declaratory relief. *See Haase*, 835 F.2d at 911 (refusing to distinguish case on ground that plaintiff was seeking declaratory rather than injunctive relief, noting that *Lyons* "cites cases dealing both with injunctive and with declaratory relief").

Here, the only injury plaintiff alleges is a violation of rights arising out of a past incident: the placement of a GPS device on his car. The prospective equitable relief he seeks is expressly directed at preventing the FBI from placing another such device on his car in the future. But the mere possibility an alleged injury may recur is too speculative

and hypothetical a harm for the Court to provide preemptive remedies.  Notwithstanding

his conclusory assertions that he "ascertains a future danger of Defendants again

attaching a tracking device to his vehicle" and "the threat that Defendants will repeat

their unlawful actions is objective and real," Am. Compl. ¶¶ 57, 4, plaintiff fails to show

that the perceived threat is realistic or imminent.[4]  The sole basis for plaintiff's belief to

the contrary appears to be the fact that "an FBI agent contacted [plaintiff] through

counsel on January 26, 2011 to ask for an interview."  *Id.* ¶¶ 4, 57.  Plaintiff does not

allege that there was any follow-up to this contact, which he claims took place over a

year ago, or explain how a single request through his counsel for an interview indicates

that the FBI is likely to place another tracking device on his car.  Nor does plaintiff allege

that he has since discovered another GPS device on his car, or any other incidents or

reasons suggesting an imminent likelihood of his doing so.[5]  Plaintiff's allegations that he

faces a realistic and imminent threat of future injury are completely speculative and fail

---

[4] Defendants Holder and Mueller note that the FBI's investigation of plaintiff has been administratively closed.  Declaration of Joel Dabisch ("Dabisch Decl.") ¶ 8.  Although the Dabisch Declaration is submitted in support of defendants' motion for summary judgment on plaintiff's Privacy Act claim, the Court may consider it for purposes of determining whether it has subject matter jurisdiction.  *See Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992) ("[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts" in deciding motion to dismiss for lack of subject matter jurisdiction); *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003) ("When reviewing a challenge pursuant to Rule 12(b)(1), the Court may consider documents outside the pleadings to assure itself that it has jurisdiction.").

[5]


to demonstrate standing to obtain the prospective relief he seeks.  Under these

circumstances, the Court lacks Article III jurisdiction either to declare the unlawfulness

of or to enter an injunction prohibiting the possible future use by the FBI of GPS tracking

technology without a warrant in a possible future investigation of plaintiff.  Such an

exercise of jurisdiction would be wholly advisory and outside the "case or controversy"

requirements of Article III.[6]

## II.     PLAINTIFF'S APA CLAIM SHOULD ALSO BE DISMISSED BECAUSE IT DOES NOT CHALLENGE AN AGENCY ACTION REVIEWABLE UNDER THE APA.

Even if plaintiff had standing to pursue an action under the APA, that claim

would still fail because he is not challenging an "agency action" that is reviewable under

that statute.  The APA provides that "[a] person suffering legal wrong because of agency

---

[6] Plaintiff also alleges that defendants' actions have "deterred others from associating with him, prospective employers most notably" and that "[t]he existence — even if now in the past — of an intensive surveillance operation by Defendants of Mr. Afifi communicate to persons and organizations that Mr. Afifi is at least suspect if not a threat to the physical security of those in [his] proximity."  Am. Compl. ¶ 69.  Even assuming *arguendo* that these allegations demonstrate concrete present injuries, plaintiff would still need to prove that they were caused by the challenged conduct and that a favorable judgment would redress them.  *Ctr. for Law & Educ. v. Dep't of Educ.*, 315 F. Supp. 2d 15, 22 (D.D.C. 2004) (citation omitted), *aff'd*, 396 F.3d 1152 (D.C. Cir. 2005); *see also Defenders of Wildlife*, 504 U.S. at 560-61 (in addition to establishing injury in fact, "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly ... trace[able] to the challenged action of the defendant,'" and "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'" in order to establish standing) (citations omitted); *Nat'l Mar. Union v. Dole*, No. 86-1295, 1987 WL 10495, *3 (D.D.C. April 27, 1987) (noting "dependence on the reactions of third parties 'may make it substantially more difficult to meet the minimum requirement of Art. III: to establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 505 (1975)).  Plaintiff does not explain how the FBI's past use of a GPS device on his car caused prospective employers or other persons to stop associating with him.  Indeed, any third party's awareness of plaintiff's contact with the FBI is far more likely due to *plaintiff's* voluntary disclosure of the incident to the public through interviews with the media.  *See* Am. Compl. ¶¶ 48-49, 61, and Exhibit A to Compl.  Nor does he explain how granting the relief he seeks would reverse or otherwise cure the alleged effects of his interactions with the FBI.

action, or adversely affected or aggrieved by agency action within the meaning of a

relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Such review is

limited to "agency action made reviewable by statute and final agency action for which

there is no other adequate remedy in a court."  5 U.S.C. § 704.  Plaintiff alleges that

defendants' actions are "arbitrary, capricious, an abuse of discretion, otherwise not in

accordance with law, and contrary to constitutional right and should be set aside as

unlawful pursuant to 5 U.S.C. § 706."  Am. Compl. ¶ 63.  However, plaintiff fails to

identify an "agency action" as that term is defined in the APA, much less one that meets

the requirements of § 704.

The term "agency action," as set forth in the APA, "includes the whole or a part

of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or

failure to act."  5 U.S.C. § 551(13).  The first five categories are in turn specifically

defined:

> "an agency statement of ... future effect designed to implement, interpret, or
> prescribe law or policy" (rule); "a final disposition ... in a matter other than rule
> making" (order); a "permit ... or other form of permission" (license); a
> "prohibition ... or ... taking [of] other compulsory or restrictive action" (sanction);
> or a "grant of money, assistance, license, authority," etc., or "recognition of a
> claim, right, immunity," etc., or "taking of other action on the application or
> petition of, and beneficial to, a person" (relief).  §§ 551(4), (6), (8), (10), (11).

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) ("*SUWA*").  Even "'failure

to act' is … properly understood as … a failure to take one of the agency actions

(including their equivalents) earlier defined in § 551(13)."  *Id.*

Plaintiff does not challenge any action by defendants that falls within any of these

categories.  Neither the installation of a GPS device nor the maintenance of records

derived therefrom constitutes a rule, order, license, sanction, relief, or the equivalent or

denial thereof, or failure to take any of these actions.  To the extent that plaintiff claims

that defendants Holder and Mueller have "authorized and maintained a *policy*" that

allowed FBI agents to violate their rights under the Constitution and the Privacy Act, *see*

Am. Compl. ¶ 64 (emphasis added), such a policy likewise fails to fit any of the types of

agency action listed in § 551, which the Supreme Court has emphasized are

"circumscribed, discrete agency actions" and preclude "broad programmatic" challenges.

*SUWA*, 542 U.S. at 62-63, 64; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890

(1990) (holding Bureau of Land Management's so-called "land withdrawal review

program," which "does not refer to a single BLM order or regulation, or even to a

completed universe of particular … orders and regulations," was not an "agency action").

      The Sixth Circuit's decision in *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644 (6th Cir.

2007) ("*NSA*"), is particularly instructive on this point.  In that case, the plaintiffs sought

to challenge the NSA's so-called Terrorist Surveillance Program ("TSP") — under which

the President of the United States had authorized the interception of certain international

communications where the NSA had reason to believe one party to the communications

was connected to al Qaeda — on the grounds that it violated the Constitution and various

statues, including the APA.  In a decision that otherwise dismissed plaintiff's suit for lack

of standing, Judge Batchelder also concluded that plaintiffs had failed to state a claim

under the APA because they had not identified any "agency action" as defined in the

APA.  *NSA*, 493 F.3d at 678-79.[7]  Judge Batchelder reasoned that "[t]he plaintiffs are not

challenging any sort of 'circumscribed, discrete' action on the part of the NSA, but are

---

[7] In a 2-1 panel decision, the judges in the majority filed separate opinions, with Judge
Gibbons concurring in the judgment only on the ground that plaintiffs could not establish
standing for any of their claims.  *See NSA*, 493 F.3d at 648, 688.

seeking to invalidate or alter the NSA's generalized practice of wiretapping certain overseas communications without warrants." *Id.* at 679 (citing *SUWA*, 542 U.S. at 64). Similarly, plaintiff here is alleging that the FBI has a "policy that authorizes its agents to use, without a warrant, devices similar or identical to the [GPS device] in order to collect and retain locational information pertaining to vehicles and their individual operators," and to use this information "to establish the associations a person maintains."  Am. Compl. ¶ 28.  This is "conduct, not agency action" as defined by the APA.  *NSA*, 493 F.3d at 678.

       Even if any of defendants' actions could be construed as "agency action" within the meaning of the APA, none of them would constitute *final* agency action under 5 U.S.C. § 704.  Where "review is sought not pursuant to specific authorization in [a] substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"  *Nat'l Wildlife Fed'n*, 497 U.S. at 882. Final agency actions are those that "mark the consummation of the agency's decisionmaking process" and "by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations and internal quotation marks omitted); *see also Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("Agency action is considered final to the extent that it imposes an obligation, denies a right, or fixes some legal relationship.") (citation omitted).  Here, none of defendants' alleged actions relating to the use of GPS devices can fairly be characterized as the "consummation" of the FBI's decisionmaking process or the imposition of any legal obligations on plaintiff.  *See NSA*, 493 F.3d at 679 n.37 (Batchelder, J.) ("It is … clear

that the NSA's wiretapping does not consummate any sort of agency decisionmaking

process nor does it purport to determine the rights or obligations of others."). Because

plaintiff has not alleged a reviewable agency action, he has failed to state a claim under

the APA.

**III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR
          DEFENDANTS ON PLAINTIFF'S PRIVACY ACT CLAIM (COUNT II)
          BECAUSE THE RECORDS AT ISSUE ARE PERTINENT TO AND
          WITHIN THE SCOPE OF AN AUTHORIZED LAW ENFORCEMENT
          ACTIVITY.**

A party is entitled to summary judgment if the pleadings and affidavits

demonstrate that there is no genuine issue of material fact in dispute for trial and that the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

moving party "bears the initial responsibility of informing the district court of the basis

for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving

party, in response to the motion, must "go beyond the pleadings and . . . designate

specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal

quotations omitted). The existence of a factual dispute, by itself is not sufficient to bar

summary judgment. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). While

the movant bears the initial responsibility of identifying those portions of the record that

demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-

movant to "come forward with 'specific facts showing that there is a genuine issue for

trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(quoting former Fed. R. Civ. P. 56(e)). If the non-movant fails to properly address the

movant's assertion of fact, the court may consider the fact undisputed and may "grant

summary judgment if the motion and supporting materials – including the facts

considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

    The Court should grant summary judgment for defendants Holder and Mueller on

plaintiff's Privacy Act claim (Count II), which asserts that defendants improperly retain

records that describe his First Amendment activities, because the records at issue were

compiled pursuant to authorized law enforcement activities.  The Privacy Act prohibits

federal agencies from maintaining records "describing how any individual exercises

rights guaranteed by the First Amendment" unless the records are "pertinent to and

within the scope of an authorized law enforcement activity."  5 U.S.C. § 552a(e)(7).[8]  The

law enforcement exception applies where the record is "relevant to an authorized criminal

investigation or to an authorized intelligence or administrative one," *see Jabara v.

Webster*, 691 F.2d 272, 279-80 (6th Cir. 1982), and does not depend on the existence of a

current law enforcement activity.  *J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600,

602-03, 607 (D.C. Cir. 1996).  *See also Maydak v. United States*, 363 F.3d 512, 517

(D.C. Cir. 2004) (noting that "[a]lthough the Privacy Act does not define 'law

enforcement activity,' we have interpreted the phrase broadly").  In particular, where the

agency's reasons for maintaining the records implicate national security issues, courts

"owe considerable deference to [the executive] branch's assessment" of such matters.

*Bassiouni v. FBI*, 436 F.3d 712, 724 (7th Cir. 2006).

    Plaintiff alleges that defendants maintain a file pertaining to him that contains

information collected by and derived from the GPS device (the "GPS records"), including

information identifying persons with whom he associated, organizations of which he was

_____

[8] Plaintiff does not specifically cite § 552a(e)(7), but it is the only substantive provision
of the Act that could possibly apply to his allegations.

a member, religious services he frequented, and other activities he claims are protected

by the First Amendment, as well as other documents, such as the Report and copies of

news articles quoting plaintiff's account of the FBI's installation and retrieval of the GPS

device.  *See* Am. Compl. ¶¶ 24-27, 48-51, 60-61.   However, as explained in the

declaration of Supervisory Special Agent ("SSA") Joel Dabisch, the GPS records and

other information relating to plaintiff — including the tracking data collected from the

GPS device and additional records the FBI created and continues to maintain

summarizing that data, as well as records reflecting other information and actions taken

concerning plaintiff — were compiled pursuant to authorized law enforcement activities.

*See* Declaration of Joel Dabisch ("Dabisch Decl.") ¶ 9.[9]

---

[9] The Dabisch Declaration filed herewith was previously filed with defendants Holder
and Mueller's Motion to Dismiss and for Summary Judgment on plaintiff's original
Complaint.

[10]



Although the investigation of plaintiff is now closed, *see id.* ¶ 8, the records

relating to plaintiff continue to be relevant to the FBI's law enforcement activities. *See*

*MacArthur*, 102 F.3d at 602 ("Materials may continue to be relevant to a law

enforcement activity long after a particular investigation undertaken pursuant to that

activity has been closed"). As SSA Dabisch explains in his declaration, and as discussed

in greater detail below, such records continue to serve important law enforcement

purposes even after a case has closed. For example, the maintenance of such records

allows the FBI to evaluate any new information it may receive that relates to a prior case,

as well as the reliability of its sources. Dabisch Decl. ¶ 13.

Thus, as demonstrated in the Dabisch Declaration, the GPS records are both

pertinent to and within the scope of an authorized law enforcement activity, and plaintiff

cannot show otherwise. Nor has plaintiff alleged that defendants have violated any other

provisions of the Privacy Act. Accordingly, the Court should grant summary judgment

for defendants Holder and Mueller on Count II.

**IV.     THE PRIVACY ACT FORECLOSES PLAINTIFF FROM OBTAINING A
          REMEDY OF EXPUNGEMENT.**

Plaintiff seeks expungement of the GPS records, or "all records collected via the

warrantless search as well as all analysis of those records."  Am. Compl. at 19 (Prayer for

Relief ¶ a(iii)).  Even if the Court were to find plaintiff had established a viable Privacy

Act claim, it should not grant such relief.  First, plaintiff's claim is not brought under

subsections (g)(1)(A) or (g)(1)(B) of the Privacy Act, which are the only vehicles for

obtaining injunctive relief under the Act.  Further, pursuant to the Act, the FBI has

properly exempted the system of records containing the GPS records from all forms of

access and amendment by private individuals.  As such, the records at issue are not

subject to expungement.

**A.     Plaintiff Has Not Brought a Privacy Act Claim For Which Injunctive
         Relief is Available.**

The Privacy Act provides civil remedies for four types of violations:

Whenever any agency

(A) makes a determination under subsection (d)(3) of this section not to
amend an individual's record in accordance with his request, or fails to
make such review in conformity with that subsection;

(B) refuses to comply with an individual request under subsection
(d)(1) of this section;

(C) fails to maintain any record concerning any individual with such
accuracy, relevance, timeliness, and completeness as is necessary to assure
fairness in any determination relating to the qualifications, character,
rights, or opportunities of, or benefits to the individual that may be made
on the basis of such record, and consequently a determination is made
which is adverse to the individual; or

(D) fails to comply with any other provision of this section, or any rule
promulgated thereunder, in such a way as to have an adverse effect on an
individual,

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1).

Injunctive relief under the Privacy Act is only available for actions for "amendment" and "access," i.e., actions brought under subsections (g)(1)(A) and (g)(1)(B). The relief for these two types of actions is set forth in subsections (g)(2) and (g)(3), respectively, while subsection (g)(4), by comparison, provides for monetary damages for "any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful." 5 U.S.C. § 552a(g)(4). Hence, injunctive relief is not available for (g)(1)(C) or (g)(1)(D) actions. *See, e.g., Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997). Although plaintiff's Amended Complaint does not specify under which civil remedies provision he is bringing his Privacy Act claim, he does not plead a claim for amendment under (g)(1)(A) or for access under (g)(1)(B), the only provisions under which he could obtain injunctive relief.[11] Since he also does not plead a claim under (g)(2)(C), his Privacy Act claim must by default be an action under the "catch-all" subsection, (g)(1)(D). However, plaintiff cannot seek expungement under (g)(1)(D), for which damages is the only remedy.[12]

---

[11] Moreover, the remedy for a (g)(1)(B) access claim is limited to an injunction against the agency from withholding the records and production to the complainant of any records improperly withheld; it does not include or contemplate expungement. 5 U.S.C. § 552a(g)(3)(A).

[12] Defendants note that plaintiff is not entitled to any damages for the FBI's alleged (e)(7) violation, for the reasons set forth in the previous section. *See supra* section III. In any event, to the extent that plaintiff seeks damages for "emotional pain, suffering" and "anxiety" under the Privacy Act, *see* Am. Compl. at 20, the Supreme Court has recently

That plaintiff alleges an (e)(7) violation does not alter this analysis, since (e)(7) in and of itself, unconnected to an amendment or access claim, does not confer a right to injunctive relief.  *See, e.g., Comm. in Solidarity with the People of El Salvador v. Sessions*, 738 F. Supp. 544, 548 (D.D.C. 1990) (denying request for disposal of records in suit alleging that FBI investigation for terrorist activity violated plaintiffs' rights under First Amendment and Privacy Act), *aff'd*, 929 F.2d 742 (D.C. Cir. 1991); *Socialist Workers Party v. Att'y Gen.*, 642 F. Supp. 1357, 1431 (S.D.N.Y. 1986) (noting that Privacy Act "provides for injunctive relief in certain circumstances, but an (e)(7) violation alone is not one of these").  In *Haase v. Sessions*, 893 F.2d 370 (D.C. Cir. 1990), the D.C. Circuit suggested in dicta that "by creating a general cause of action (under (g)(1)(D)) for violations of the Privacy Act, Congress presumably intended the district court to use its inherent equitable powers — at least to remedy violations of (e)(7)."  *Id.* at 374 & n.6.[13]  However, the *Haase* court acknowledged that other circuits have held that injunctive remedies under the Privacy Act are only available for amendment and access actions, and ultimately declined to reach the issue of whether an action demanding expungement of records maintained in violation of (e)(7) was properly brought under (g)(1)(A), (g)(1)(D), or some other source of law.  *Id.* at 374-375 & n.6; *see also Clarkson v. IRS*, 678 F.2d 1368, 1375-76 & n.11 (11th Cir. 1982) (injunctive

held that the Privacy Act does not waive the government's sovereign immunity as to such relief.  *FAA v. Cooper*, 132 S. Ct. 1441 (2012).

[13] The *Haase* court was mainly concerned with the situation in which "a party charging an (e)(7) violation sought an injunction broader in scope than amendment or expungement to address the offending activity."  *Id.* at 374 n.6.  The plaintiff in *Haase*, however, contended on appeal that "the relief he sought and was granted was essentially expungement," and that as such it was "only a variation of amendment and therefore authorized by section (g)(1)(A) to remedy violations of (e)(7)."  *Id.* at 374.  Here, to the extent that plaintiff is seeking other injunctive relief beyond expungement, he does not, as discussed earlier, have standing to seek such relief.  *See supra* section I.

remedies available only for amendment and access actions, even in context of alleged

(e)(7) violation), *cited in Nagel v. U.S. Dep't of Health, Educ. & Welfare*, 725 F.2d 1438,

1441 (D.C. Cir. 1984)).  Thus, the weight of the case law demonstrates that absent a

claim for amendment under (g)(1)(A), which he has not pled, plaintiff is not entitled to

the remedy of expungement under the Privacy Act.

### B.        The Records At Issue Are Exempt From the Amendment Provisions of the Privacy Act and Therefore Are Not Subject to Expungement.

Even if plaintiff had brought a claim for amendment under the Privacy Act or

injunctive relief was available under subsection (g)(1)(D), he would still be foreclosed

from obtaining a remedy of expungement because the records at issue are exempt from

the amendment provisions of the Act.  An agency may exempt any system of records

from any part of the Act that is not expressly designated non-exemptible if the system is

"maintained by an agency or component thereof which performs as its principal function

any activity pertaining to the enforcement of criminal laws" and consists of "information

compiled for the purpose of a criminal investigation, including reports of informants and

investigators, and associated with an identifiable individual."  5 U.S.C.

§ 552a(j)(2)(B).  The Act also authorizes additional exemptions from specific parts of the

Act for systems of records consisting of "investigatory material compiled for law

enforcement purposes, other than material within the scope of subsection (j)(2)."

5 U.S.C. § 552a(k)(2).  Both subsections 552a(j) and (k) allow for exemption of

qualifying records from subsection (d), which governs the agency's obligations to grant

individuals access to and amendment of records pertaining to them.

The GPS records are contained in the Central Records System (CRS), and for the

reasons described above, constitute investigatory material compiled for law enforcement

and criminal investigation purposes.  Dabisch Decl. ¶ 11.  Pursuant to § 552a(j) and (k), the FBI has properly exempted the CRS from the amendment provisions of the Privacy Act.  *Id.* ¶¶ 11-12; 28 C.F.R. § 16.96(a)(1).  The CRS has been so exempted partly because, given "the nature of the information collected and the essential length of time it is maintained," requiring the FBI to amend any information "thought to be incorrect, irrelevant or untimely…would create an impossible administrative and investigative burden by forcing the agency to continuously retrograde its investigations attempting to resolve questions of accuracy."  Dabisch Decl. ¶ 12 (quoting 28 C.F.R. § 16.96(a)(1), (b)(2)(iii)).  The exemptions apply to any CRS documents so long as they, like the GPS records at issue here, constitute "law enforcement records within the meaning of the [Privacy Act]."  *Doe v. FBI*, 936 F.2d 1346, 1353 (D.C. Cir. 1991).  Because the GPS records are exempt from the amendment provisions of the Privacy Act, it follows that plaintiff cannot obtain the remedy of expungement, which is nothing more than an extreme form of amendment.  *See id.* at 1352 ("[A] determination that a civil claim for expungement may be foreclosed by an agency's exemption rule is not only consistent with, but necessary to effectuate, Congress' intent that certain records systems may truly be sheltered from the Act's amendment procedures.").

Again, plaintiff's claim that the FBI violated subsection (e)(7) of the Act does not affect this conclusion.  Defendants do not contend that the records at issue are exempt from (e)(7), but rather that they are exempt from amendment and, by extension, expungement.  *See Bassiouni*, 436 F.3d at 723 (because CRS "is not subject to the subsection (d) amendment process, the FBI cannot be held liable under (g)(1)(A) for failure to comply with that process" and plaintiff thus had "no avenue for relief under

§ 552a(g)(1)(A)" for his (e)(7) claim).  The Court is therefore proscribed from ordering expungement of the GPS records.

Finally, even if the GPS records were not expressly exempt from the Privacy Act's amendment provisions, they should not be expunged because their destruction could significantly impair the FBI's ability to conduct any ongoing or future investigations.  First, when the FBI receives new information that may relate to a prior investigation, it examines and seeks to verify that information in the context of information it has already received.  Thus, if the FBI's existing records regarding plaintiff were expunged, and further information relating the investigative matter at issue were later brought to the FBI's attention, the investigating agent would not have the complete context in which to evaluate the newly received information and properly assess the matter.  Dabisch Decl. ¶ 13.  Further, the maintenance of investigative records permits the FBI to assess the reliability of sources of information it receives over time.  The destruction of files would severely hinder the FBI's ability to evaluate the accuracy and credibility of information received from the same source.  *Id.*  In addition, the FBI maintains investigative records for historic and accountability purposes.  The destruction of records relating to investigative activity would impede any future inquiry into how the FBI responded to information it received. ████████████████████████████████ ████████████████████████████ *Id.*  For these reasons, an order that the records at issue be destroyed would not be consistent with the FBI's exemption of these records from the amendment provisions of the Privacy Act.  *Id.*

## CONCLUSION

For the foregoing reasons, defendants Holder and Mueller respectfully request

that the Court grant their motion and dismiss all claims against them.

Dated: September 11, 2012         Respectfully submitted,

                                STUART F. DELERY
                                Acting Assistant Attorney General

                                RONALD C. MACHEN
                                United States Attorney

                                VINCENT M. GARVEY
                                Deputy Director

                                ANTHONY J. COPPOLINO
                                Special Litigation Counsel


                                _____
                                Lynn Y. Lee
                                Trial Attorney
                                United States Department of Justice
                                Civil Division, Federal Programs Branch
                                Tel: (202) 305-0531
                                Fax: (202) 616-8470
                                lynn.lee@usdoj.gov


                                *Attorneys for Defendants Holder and*
                                *Mueller in Their Official Capacities*